IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Susan Jager Oman, ) | |
| ) | |
| Plaintiff, ) | C/A No. 0:19-0848-MBS |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Andrew Saul, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On March 20, 2019, Plaintiff Susan Jager Oman filed the within action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits.[1] In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Paige J. Gossett for a Report and Recommendation.

## I.  RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed a second application for disability and disability insurance benefits on April 28, 2015, alleging disability beginning January 3, 2014. The claim was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which hearing was held on November 21, 2017. At the time of her hearing, Plaintiff was forty nine years old. ECF No. 19-2, 37 (hereinafter "R.xx"). Plaintiff completed high school and one year of college. R. 37. Plaintiff previously worked as an ophthalmic technician and supervisor for twenty years. Plaintiff has not worked since 2012. R. 37-38.

---

[1]Plaintiff previously protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability commencing January 23, 2012. The claim was denied after a hearing before an ALJ and on review by the Appeals Council. This court affirmed the Commissioner's decision by order filed on August 23, 2016. Oman v. Commissioner, C/A No. 0:15-2052-MBS.

Plaintiff testified that there are two things preventing her from working: joint pain and side effects from infusions, such as short term memory problems and being unable to concentrate. R. 38. Plaintiff has been treated for rheumatoid arthritis by Dr. Gregory W. Niemer for approximately ten years. R. 38-39. [See ECF No. 9-16, 18-27; ECF No. 19-17, 1-23; ECF No. 19-9, 1-19] She receives monthly infusions and takes pain medications and muscle relaxers daily. The infusions last about two hours and leave Plaintiff with severe headaches so that she is pretty much in bed for two to three days after receiving an infusion. R. 39. The pain is the worst in her feet, ankles, and hands. She receives steroid injections in her neck and hips. Her back, shoulders, and hands also hurt. R. 40. Plaintiff has trouble walking and it is not comfortable to stand up for any length of time because she has lost the tissue on the bottom of her feet from the rheumatoid arthritis. Id. Plaintiff testified that she has a chronic tingling and stiffness in her hands. She receives steroid injections in both wrists, which helps with inflamation, although she still must take pain medication. R. 41. She experiences headaches from the pain in her neck that her neurologist says is from rheumatoid arthritis, so she receives steroid injections in her neck as well.

Plaintiff testified that the infusions cause her to experience memory loss, confusion, chronic crying, and depression. She cannot focus long enough to get through a TV show most days. R. 43. Plaintiff has chronic problems sleeping because of the pain. R. 45. She is treated by Felicia Reid, LPC, for depression and anxiety. [See ECF No. 9-16, 28-31] She sees Caisson T. Hogue, M.D. for primary care [see ECF No. 9-14. 2-21; ECF No. 9-24, 39-43]; a cancer doctor for chronic anemia [Julia H. Saylors, M.D., see ECF No. 9-24, 60-66]; and Walter S. Moseley, a nephrologist, for chronic low magnesium levels. [See ECF No. 9-16, 1-17, 53-65; ECF No. 9-20, 20-38] The medications cause her to have chronic diarrhea, chronic gastritis, and nausea. R. 48. She receives phenergan from Gregory C. Goodear, M.D., her gastroenterologist. Id. [See ECF No. 9-17, 24-42;

9-18, 2-11]

Plaintiff gets up around 9:00 a.m. or 10:00 a.m., has something to eat, and watches TV if she can focus on it. Id. If she washes a load of clothes she has to lie down on a heating pad. She has friends who bring meals to her house during the week. R. 50. She can use a computer for a short period of time. Plaintiff testified she has trouble bending over and keeping her balance because of pain in her feet and ankles. R, 51. Plaintiff testified that she prepares dinner, which usually consists of a frozen dinner. She has groceries delivered from Wal-Mart. R. 52. Plaintiff also is treated by Dr. Hogue for diabetes, and takes two insulin treatments and a pill. R. 55. She must stay close to a bathroom for her chronic diarrhea. R. 56.

Tonetta Watson-Coleman next testified as vocational expert ("VE"). R. 57. She testified that, pursuant to the Dictionary of Occupational Titles and the Selected Characteristics of Occupations, an ophthalmic technician is classified as SVP of 6, skilled, strength level sedentary, as performed, medium, DOT 079.364-014. R. 58. The ALJ provided the following hypothetical:

> Assume I find the claimant is 49 years old, has a 12th grade education plus one year of college, and I find she can perform light work. She would be limited to standing and walking, limited to four hours for an eight-hour day she would also be limited to frequent pushing and pulling with the bilateral upper extremities; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing of ladders; would also be limited to frequent overhead reaching with the bilateral upper extremities, as well as frequent handling and fingering; and she would also need to avoid concentrations of – concentrated exposure to extreme cold and extreme heat, and finally would be limited to understanding, remembering and carrying out simple instructions. With those limitations, would there be any jobs available she could perform?

Id.

The VE noted final inspector, work ticket distributor, and switch box assembler as jobs available in the national economy. R. 59. The ALJ then asked the VE to assume the same elements as the first hypothetical, except the ALJ would find that the claimant "would require on an

3

unscheduled basis work breaks would average two hours for each eight-hour day, with that additional limitation, could she perform any of the jobs just identified?" Id. The VE replied in the negative. Plaintiff's counsel asked if any of the jobs noted would be eliminated if one could not lift more than five pounds. The VE testified that the final inspector and switch box assembler likely would be eliminated, and that the job of work ticket distributor could be eliminated, depending upon the employer. R. 59-60. The VE also testified that the jobs would be eliminated if one would not be able to stand for less than two hours out of an eight-hour day. R. 60. In addition, the VE testified that, at this skill level, anything greater than one unexcused absence a month on a regular basis would prohibit the worker from maintaining employment. R. 61. Plaintiff's counsel asserted to the ALJ that Dr. Niemer's medical records, statement from Ms. Reid, and consultative exam by Dr. McClain demonstrated that Plaintiff could not perform the jobs identified by the VE. R. 61-62.

The ALJ issued a decision denying benefits on April 30, 2018. See ECF No. 9-2, 14-28. In his decision, the ALJ found that Plaintiff had the following severe impairments: arthritis, bilateral carpal tunnel syndrome, hypomagnesemia, obesity, anxiety, and depression. R. 16. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.). R. 17. The ALJ stated that the medical evidence regarding Plaintiff's carpal tunnel syndrome did not include evidence of an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, use the upper extremities, or demonstrate a marked limitation in any paragraph B criteria. The ALJ noted that Plaintiff could walk around a store for thirty minutes, drive and attend doctor appointments independently, and could use a computer for a short period of time. R. 17-18.

The ALJ next stated that the record did not reflect that Plaintiff was unable to ambulate

effectively or perform fine and gross motor movements; did not reflect inflammation or deformity in a major peripheral joint, ankylosing spondylitis, or other spondyloarthropathies; and that there was no marked limitation in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. The ALJ further found that the records regarding Plaintiff's hypomagnesemia, obesity, and mental impairment did not support a finding that Plaintiff's impairments met or medically equaled a listing. The ALJ noted that Plaintiff had a mild limitation in understanding, remembering, or applying information, but that she was able to answer questions at the hearing, she was able to remember medications and appointments by keeping an appointment book with her at all times, she was able to manage her sixteen-year old son's medication, she was able to go out in public without reports of her getting lost or needing assistance to get home. The ALJ found Plaintiff's mental status examinations generally revealed normal cognition; average or normal intelligence; logical, coherent, and organized thought processes; and fluent or normal speech. R. 18.

      The ALJ found that Plaintiff had a mild limitation in interacting with others. The ALJ recited that Plaintiff interacted appropriately at the hearing, texted her family and friends, and spoke on the phone with her mother a couple of times a week. The ALJ also noted that medical records described Plaintiff as cooperative, delightful, smiling, and pleasant, even during an emergency room visit; and that she had friends who would bring food for her and her son. R. 19. He also found that Plaintiff had a moderate limitation with respect to concentrating and persisting or maintaining pace. The ALJ noted that Plaintiff was able to follow along and answer questions appropriately at the hearing. She could pay her bills, handle a savings account, count change, and use a checkbook/money order by keeping a list of bills. According to the ALJ, Plaintiff's mental status examinations generally revealed that Plaintiff was alert and oriented without any evidence of

5

distractibility. Id.

The ALJ found that Plaintiff experienced a mild limitation in term of adapting or managing herself.  Although Plaintiff did not like changes in her routine because it caused her stress, irritability, and frustration, she could drive and go grocery shopping independently, managed her multiple medications and doctor appointments.  The ALJ pointed out that the record reflected Plaintiff's mental status examinations generally revealed she was well-groomed, appropriately dressed, and had an overall normal appearance.  R. 19-20.  No treating or examining medical source stated that the claimant had an impairment or combination of impairments that met or equaled the criteria of any listed impairment.  R. 20.

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff is limited to standing and walking for four hours in an eight-hour day; frequent pushing and pulling with the bilateral upper extremities; occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling.  Plaintiff was limited to no climbing of ladders and to frequent overhead reaching with the bilateral upper extremities, as well as frequent handling and fingering.  The ALJ noted that Plaintiff should avoid concentrated exposure to extreme cold and extreme heat, that she is limited to understanding, remembering, and carrying out simple instructions.  R. 20.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms related to arthritis, joint pain, depression and anxiety; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Regarding Plaintiff's rheumatoid arthritis, the ALJ observed that Plaintiff's mild arthritis in her hips and ==degenerative changes in her left shoulder that were treated by Dr. Niemer==.  The ALJ observed

that

> [d]iagnostic testing from May 2014 and June 2017 revealed mild arthritis in the claimant's hips and degenerative changes in the claimant's left shoulder, respectively (Ex. B7F/79; and B25F/43). Dr. Niemer treated the claimant's rheumatoid arthritis with infusions and steroids. The record reflected that the infusions and low dose steroids helped minimize the inflammation and lessened the claimant's pain (See for example, Ex. B7F/5, 30). Dr. Niemer noted that the claimant's rheumatoid arthritis joint pain was greatly improved since starting the infusions (Ex. B7F/8). The record reflected that despite positive results, Dr. Niemer changed the claimant's biologic infusion after the claimant alleged side effects that limited her ability to perform activities of daily living (Ex. B7F/45, 50; and B29F/38). However, the claimant's activities of daily living, as discussed in the above "paragraph B" criteria, reflected greater ability than the claimant alleged. Moreover, despite the claimant's complaints of pain and its impact on her ability to perform physical activity, Dr. Niemer encouraged the claimant to have a regular exercise regimen (Ex. B7F/27, 34, 58; B32F/7). Despite the reports of pain, the record also did not reflect any exacerbations of symptoms, even when off the biologic, that required the claimant go to the emergency room or receive inpatient hospitalizations.

R. 21.

The ALJ found that the evidence did not support that Plaintiff's hypomagnesemia was as limiting as she alleged. The ALJ noted that Plaintiff primarily saw Walton S. Moseley, M.D., who treated her with medication. R. 21-22. The ALJ also observed that Plaintiff's obesity was not as limiting as Plaintiff alleged. The ALJ stated that Dr. Niemer encouraged Plaintiff to diet and exercise; however, there was no evidence that any treating professional recommended anything invasive, such as surgery, for weight loss. The ALJ noted that the record reflected Plaintiff had normal strength and range of motion of her lower extremities and a normal gait without the use of an assistive device. The ALJ stated that he did, however, consider Plaintiff's obesity with her other impairments in formulating her residual functional capacity ("RFC"). R. 22.

The ALJ next concluded that Plaintiff's carpal tunnel syndrome was not as limiting as Plaintiff alleged. The ALJ noted that Plaintiff wore braces on her wrists, received injections, but had not pursued surgery. The ALJ further stated that, despite allegations of pain, Plaintiff could use

a computer, drive, take items off the grocery shelf, and write.  The ALJ also found that the evidence did not support that Plaintiff's mental health impairments were as limiting as she alleged.  The ALJ noted that there were no reports that Plaintiff had been psychiatrically hospitalized or that any treating provider recommended inpatient treatment.  Rather, Plaintiff's primary care physician prescribed medication at generally consistent doses to treat Plaintiff's depression and anxiety.  The ALJ observed that Plaintiff attended therapy up to twice a month, and that between April 2014 and October 2017 Plaintiff only attended four counseling sessions.  Plaintiff's mental status examinations were generally normal.  R. 21-22.

The ALJ noted that Plaintiff had a medical consultative examination with Mark A. McClain, Ph.D., on July 13, 2015.  [See ECF No. 9-16, 32-7]  Plaintiff claimed she experienced severe pain from rheumatoid arthritis and the side effects from her medication interfered with her ability to perform work-related tasks.  Plaintiff told Dr. McClain that she experienced depression every day and anxiety symptoms on a consistent basis.  She also told Dr. McClain that she took care of her personal needs and performed activities of daily living.  Dr. McClain reported that Plaintiff's examination did not suggest the presence of a cognitive impairment, but did exhibit some weakness in delayed recall.  The ALJ noted that Dr. McClain diagnosed Plaintiff with persistent depressive disorder and rule/out generalized anxiety disorder.  R. 23.

The ALJ concluded in sum that, Plaintiff treated her impairments conservatively with medication and braces for her wrist.  The ALJ again noted that Plaintiff had been encouraged to participate in regular exercise and generally had a normal gait, strength, and range of motion.  The ALJ recounted that, to account for her obesity, rheumatoid arthritis, and hypomagnesemia, he had limited Plaintiff's activity to less than the full range of light work as follows: less than the full range of light work, including standing and walking for four hours in an eight-hour day; occasionally

climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders. To account for Plaintiff's reported pain in her shoulders and degenerative changes, the ALJ limited her to frequent pushing and pulling with the bilateral upper extremities; frequent overhead reaching; and avoiding concentrated exposure to extreme cold and extreme heat. To account for Plaintiff's carpal tunnel syndrome that required injections and braces, the ALJ limited Plaintiff to frequent handling and fingering. Finally, to account for Plaintiff's mental impairments and history of psychotropic medication, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple instructions. The ALJ analyzed the consistency of Plaintiff's allegations with the medical evidence of record in accordance with SSR 16-3p, and determined that Plaintiff's allegations were not consistent with a more restrictive RFC. R. 23.

The ALJ reported that he gave great weight to the opinions of the State Agency psychological consultants, who stated that Plaintiff could carry out short and simple instructions. The ALJ stated that these opinions were consistent with the objective medical evidence demonstrating generally normal mental status examinations as well as Plaintiff's conservative treatment. The ALJ acknowledged that the State Agency consultants had not examined Plaintiff, but stated that they were trained in evaluating social security disability claims, reviewed the evidence that was made available to them, and made reasonable, well-supported conclusions based on that evidence. The ALJ noted that the State Agency consultants had recommended Plaintiff be limited to no exposure to hazards and noise; however, the ALJ determined that the limitations were not supported by Plaintiff's diagnostic findings and treatment. R. 23-24.

The ALJ recounted that he also gave limited weight to the decision of the ALJ in Plaintiff's earlier case, and found that Plaintiff was not as limited as found in the prior opinion. R. 24. The ALJ reported that he gave little weight to the opinion of Dr. McClain:

9

> I gave little weight to the opinion of the psychological consultative examiner (Ex. B13F). The consultative examiner stated that the claimant would experience significant problems remembering how to perform tasks and in the physical performance of the tasks. His opinion seemed to be based on the claimant's subjective statements rather than his objective evaluation that revealed no overt cognitive deficit, and only some weakness in delayed recall. Additionally, the consultative examiner's statements as to the claimant's physical impairments are beyond the scope of his specialization as he is a psychologist, not a medical doctor.

R. 24.

The ALJ also gave little weight to Dr. Niemer's treating source statement, as follows:

> I gave little weight to the treating source statement from Dr. Niemer (Ex. B14E; and B31F). Although Dr. Niemer treated the claimant for years, his opinions were not supported by, or consistent with, his own treatment records. For instance, Dr. Niemer reported that the claimant had a marked limitation in activities of daily living and maintaining social function and an extreme limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace. As discussed above, by the "B criteria," the claimant had mild, or no more than moderate, limitations in those areas of functioning. Dr. Niemer also noted that the claimant could only stand for 15 minutes at a time, sit for 15 minutes at a time, and only lift up to five pounds on an occasional basis. These opinions were inconsistent with Dr. Niemer's treating records that demonstrated the claimant's symptoms improved with medication, as discussed above. Dr. Niemer also added that the claimant could never stoop and only occasionally perform fine and gross motor movements with her bilateral hands, or raise her bilateral shoulders. This opinion was not supported by Dr. Niemer's treatment records noting generally normal range of motion at the shoulder, without tenderness, swelling or effusion (Ex. B7F/14, 21, 33, 43, 48, 53, 58, 63, 68, 72, 73; B21F/23, 48; and B32F/6). The limitation to the claimant's hands was not supported by her activities of daily living, including shopping, paying bills, using the computer, and independently managing her personal hygiene, as discussed above. Accordingly, I gave Dr. Niemer's treating source opinion little weight.

R. 24-25.

The ALJ also gave little weight to the statements from Ms. Reid, wherein Ms. Reid stated that Plaintiff's physical pain impacted her ability to work and that Plaintiff experienced difficulty managing her mental state and time and would be at risk for emotional flare-ups in a high stress work environment. The ALJ found that Ms. Reid's statements as to Plaintiff's physical impairments were beyond the scope of Ms. Reid's experience because she is not a medical doctor. The ALJ also

found that Plaintiff's claimed inability to handle stress was not supported by the record. The ALJ noted that Plaintiff divorced her husband and her son was diagnosed with cancer during the relevant period; however, the record did not reflect exacerbations of Plaintiff's mental impairments that required significant changes to her treatment during these periods of high stress. The ALJ also observed that Ms. Reid is not considered an acceptable medical source for medical opinions under 20 C.F.R. § 404.1502. R. 24.

The ALJ next determined that Plaintiff could not return to her past relevant work as an ophthalmic technician. However, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed, including:

- Final inspector, DOT 727.687-054, unskilled, light, SVP 2, with 508,590 jobs in the national economy and 12,270 jobs in South Carolina;
- Work ticket distributor, DOT 221.667-010, unskilled, light, SVP 2, with 309,110 jobs in the national economy and 5,670 jobs in South Carolina; and
- Switchbox assembler I, DOT 722.687-010, unskilled, light, SVP 2, with 241,910 jobs in the national economy and 1,150 jobs in South Carolina.

R. 26-27.

The ALJ concluded that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Accordingly, the ALJ determined that Plaintiff was not entitled to benefits because she was not disabled under sections 216(i) and 223(d) of the Social Security Act, at any time from January 3, 2014, the alleged onset date, through September 30, 2017, the date last insured. R. 27.

On January 25, 2019, the Appeals Counsel found no reason to review the ALJ's decision. Accordingly, the ALJ's decision became the final decision of Defendant Commissioner of Social

Security ("Commissioner"). ECF No. 9-2, 2-4.

Plaintiff filed her brief in this court on November 14, 2019, asserting that the ALJ erred in his findings that Plaintiff had RFC to perform light work; that the ALJ had failed to give proper weight to the opinions of Plaintiff's treating and examining physicians regarding the nature and severity of her complaints; that the ALJ erred in giving great weight to the State Agency consultants and giving limited weight to the consultive examiner; that the ALJ erred in relying on the testimony of the VE and the hypothetical questions when not including all of Plaintiff's limitations; and that the ALJ erred in finding that Plaintiff is not disabled because the Commissioner failed to carry out its burden of proof at step 5. The Commissioner filed his brief on December 26, 2019, to which Plaintiff filed a response on March 9, 2020.

On July 17, 2020, the Magistrate Judge filed her Report and Recommendation. The Magistrate Judge first noted that Plaintiff's first issue challenges the ALJ's findings regarding her RFC; however, rather than including any specific argument regarding this issue, Plaintiff supported the argument with her subsequent arguments that the ALJ erred in weighing the opinion evidence. Accordingly, the Magistrate Judge commenced her analysis with Plaintiff's challenges to the opinion evidence from Dr. Niemer, Plaintiff's treating rheumatologist; and Dr. McClain, Plaintiff's consultative examiner. The Magistrate Judge noted that the Social Security administration typically accords greater weight to the opinion of treating sources because treating physicians are best able to provide a detailed, longitudinal picture of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c). The Magistrate Judge recounted that a treating physician's opinion is evaluated and weighed "'pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5)

whether the physician is a specialist.'" ECF No. 32, 6-7 (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)); see also 20 C.F.R. § 404.1527.  The ALJ observed that "'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'" ECF No. 2, 7 (quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)).

Regarding Dr. Niemer, the Magistrate Judge observed that the ALJ discussed Dr. Niemer's treatment records in great detail, finding that the evidence did not support Plaintiff's arthritis to be as severe as she alleged.  The Magistrate Judge remarked that the ALJ had addressed Plaintiff's carpal tunnel syndrome, finding that Plaintiff wore braces on her wrists, received injections, and did not pursue surgery; and that Plaintiff could use the computer, drive, take items off the shelf, and write.  The Magistrate Judge recounted the ALJ's opinions verbatim, and then turned to Plaintiff's challenges to the ALJ's decision to discount Dr. Niemer's and Dr. McClain's opinions.

As recited by the Magistrate Judge, Plaintiff argued in her brief that the ALJ failed to consider the frequency of Plaintiff's visits with Dr. Niemer over the course of four years that included examinations and treatment as well as infusion; the side effects Plaintiff experienced from the treatment; and indications that Plaintiff's condition deteriorated when she was taken off the treatments.  Plaintiff also argued that Dr. Niemer's opinion is supported by treatment records from John L. Lucas IV, M.D., a neurologist [see ECF No. 9-16, 38-52; ECF No. 9-24, 22-26, 30-32, 46-53], as well as records from Dr. William S. Corey [see ECF No. 9-24, 54-59], Dr. Moseley, and Dr. Goodear.  Regarding Dr. McClain, Plaintiff argued that his opinion was consistent with the findings of Dr. Niemer and Dr. Lucas.  Further, according to Plaintiff, the ALJ erred in giving greater weight to the opinions of the State Agency psychological consultants than those of Dr. McClain.

The Magistrate Judge found that Plaintiff failed to demonstrate the ALJ's decision is

13

unsupported by substantial evidence or based on an incorrect application of the law. The Magistrate Judge found that the ALJ applied the relevant factors in evaluating the opinion evidence. The Magistrate Judge observed that it is not automatically reversible error to credit the opinions of the State Agency psychological consultants over Plaintiff's examining and treating sources. ECF No. 32, 11 (citing Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (finding that the testimony of a non-examining physician can constitute substantial evidence when it is consistent with the record); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); and 20 C.F.R. § 404.1513a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.")).

      The Magistrate Judge concluded that the ALJ properly considered the nature and frequency of Dr. Niemer's treatment relationship with Plaintiff as evidenced by the record, and also considered Dr. Niemer's specialty. The Magistrate Judge concluded that the ALJ did the same with respect to Dr. McClain. The Magistrate Judge further determined that the ALJ offered reasonable bases in giving Dr. Niemer's and Dr. McClain's opinions little weight.

      As to Plaintiff's claims regarding her other treating physicians, the Magistrate Judge stated:

> Oman further argues that Dr. Niemer's opinion is supported by treatment records from Dr. John Lucas, a neurologist, indicating that Oman reported side effects from her medications, neck and back pain, neuropathy in her feet, and numbness and

>   tingling in her hands. (Tr. 405-17, 1055.) Oman also directs the court to Dr. Corey's records suggesting foot pain and swelling (Tr. 1091), Dr. Moseley's records include a diagnosis for proteinuria and hypomagnesemia, which Oman argues would contribute to her fatigue (Tr. 906-07), and Dr. Goodyear's [*sic*] records treating Oman for nausea and gastritis (Tr. 755-69). With regard to Dr. McClain's consultative opinion, Oman argues that Dr. McClain's opinion as to Oman's cognitive problems were consistent with the findings of Dr. Niemer and Dr. Lucas.

ECF No. 32, 10.

The Magistrate Judge determined the ALJ's decision as a whole revealed that the ALJ summarized and considered Plaintiff's medical records and reasonably found that the medical records undermined some of the limitations posited. Id. at 11 (citing 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")). The Magistrate Judge stated that the ALJ considered many of the exact issues and records raised by Plaintiff, and that, although Plaintiff might be able to point to selective evidence that could support the opinions of Dr. Niemer and Dr. McClain, she failed to demonstrate that the ALJ's evaluation of the opinion evidence is unsupported by substantial evidence. ECF No. 32, 12 (citing Jackson v. Astrue, C/A No. 8:08-2855-JFA-BHH, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to 'make a bridge' between the evidence and his conclusions."); Owens v. Colvin, No. 0:13-CV-386-BHH, 2014 WL 7043215, at *4 (D.S.C. Dec. 12, 2014) ("Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment.")).

The Magistrate Judge determined that Plaintiff's remaining issues hinged on the success of her arguments regarding opinion evidence. The Magistrate Judge concluded that, because Plaintiff failed to demonstrate the ALJ's conclusions regarding Dr. Niemer and Dr. McClain were not supported by substantial evidence, the remaining assertions of error also failed. The Magistrate Judge therefore recommended that the Commissioner's decision be affirmed. Plaintiff filed objections to the Report and Recommendation on September 9, 2020, to which the Commissioner filed a reply on September 23, 2020.

This matter is now before the court for review of the Magistrate Judge's Report and Recommendation. The court should review de novo only those portions of a Magistrate Judge's Report to which specific objections are made and review those portions to which only "general and conclusory" objections have been made for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Opriano v. Johnson, 687 F.2d 44, 77 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28. U.S.C. § 636(b).

## II.  STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 4059(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th

16

Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [her] conclusion is rational." Vitek, 438 F.2d at 1157-58. Nevertheless, "it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is 'substantial evidence' in the record to support the final decision below." Jenkins v. Saul, Civil Action No. 1:19-CV-00298-KDB, 2020 WL 5440511, *2 (W.D.N.C. Sept. 10, 2020) (citing Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982)) (internal citations omitted).

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III. APPLICABLE LAW

An individual is eligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, if he or she is insured, has not attained retirement age, has filed an application for disability insurance benefits, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Under Title XVI of the Act, 42 U.S.C. §§ 1381-3(f), benefits are available to

17

an individual who is financially eligible, files an application, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. See Barnhart v. Walton, 535 U.S. 212, 214-15 (2002). Additionally, for disability insurance benefits, the claimant must prove he was disabled prior to his date last insured. Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(v). Through the fourth step, the burden of production and proof is on the claimant. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). At step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. Id. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

## IV. DISCUSSION

Plaintiff first asserts that the Magistrate Judge erred in affirming the ALJ's decision to give little weight to the record and findings of Dr. Niemer. Plaintiff points out that Dr. Niemer treated Plaintiff since 2013 and was required to change numerous infusions and medications because of the side effects Plaintiff experienced. Plaintiff argues that the physician's statement completed by Dr. Niemer demonstrates she is disabled. However, as the Magistrate Judge properly found, and as set out in detail hereinabove, the ALJ considered all the medical evidence and found that Dr. Niemer's opinion was not supported by Plaintiff's medical records. The Magistrate Judge properly determined that the ALJ offered reasonable explanations for giving Dr. Niemer's opinions little weight. The court's independent review of the record also compels the conclusion that the ALJ's evaluation of the opinion evidence is supported by substantial evidence. Plaintiff's objection is without merit.

Plaintiff asserts that the Magistrate Judge erred in discounting the record evidence with respect to Drs. Lucas, Corey, Moseley, and Goodear, all of which she contends corroborates Dr. Niemer's findings. As set forth in detail above, the Magistrate Judge found that the ALJ summarized and considered all of Plaintiff's medical records in making his decision. The court agrees with the Magistrate Judge that Plaintiff failed to show the ALJ's decision is not supported by substantial evidence. Plaintiff's objection is without merit.

Plaintiff next contends that the Magistrate Judge erred in finding the ALJ properly gave more weight to the State Agency consultants than to Dr. McClain's opinion. The Magistrate Judge concluded that the ALJ reasonably articulated his decision to give Dr. McClain's opinion little weight and that his decision was supported by substantial evidence. Plaintiff's objection is without merit.

Finally, Plaintiff objects to the Magistrate Judge's failure to address the remaining arguments

raised by Plaintiff in her brief, including the her challenges to the hypothetical questions posed to the VE. Plaintiff asserts that the records show she would not be able to maintain employment or work at the level found by the ALJ. As the Magistrate Judge found, however, Plaintiff's remaining arguments hinge on the ALJ's purported error in discounting Dr. McClain's opinion, which in turn caused the ALJ to formulate a hypothetical question that did not contain all of Plaintiff's limitations, resulting in unreliable testimony from the VE. Because the ALJ provided a reasonable explanation for his decision to give greater weight to the opinions of the State Agency consultants, Plaintiff's remaining contentions must fail.

## V.  CONCLUSION

After reviewing the entire record, the applicable law, the briefs of the parties, the findings and recommendations of the Magistrate Judge, and Plaintiff's objections, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the reasons set out herein and in the Report and Recommendation, the Commissioner's final decision is **affirmed**.

**IT IS SO ORDERED.**


/s/ Margaret B. Seymour
Senior United States District Judge


Columbia, South Carolina

November 30, 2020